UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
AHMAD ANWAR,

Plaintiffs,

- against -

NEW YORK STATE DEPARTMENT OF CIVIL SERVICE, COMMISSIONER TIMOTHY R. HOGUES, GOVERNOR KATHLEEN HOCHUL, and PASQUALE SULLO, in their individual and professional capacities,

Defendants.
----------------------------------------------------------------------X

Case No.: 1:25-cv-00120 (AMN/PJE)

**COMPLAINT**

**Jury Trial Demanded**

The Plaintiff AHMAD ANWAR ("Plaintiff") by and through his attorneys, BERLINGIERI LAW, PLLC, as and for his Complaint in this action against the Defendant NEW YORK STATE DEPARTMENT OF CIVIL SERVICE, COMMISSIONER TIMOTHY R. HOGUES, GOVERNOR KATHLEEN HOCHUL, PASQUALE SULLO, in their individual and professional capacities, ("Defendant" or "DCS") respectfully alleges upon information and belief as follows:

## NATURE OF THE CASE

1. This is a civil action for damages and equitable relief based upon willful violations that Defendants committed of Plaintiff's rights guaranteed to his by federal and state law, and complains for causes of action of: (i) violation of the Free Exercise Clause of the First Amendment of the United States Constitution ("First Amendment"); (ii) violation of Equal Protection rights under the First Amendment; (iii) 42 U.S.C. § 1983 violation of Plaintiff's First Amendment right to the free exercise of religion; (iv) *Monell* violation under 42 U.S.C. § 1983; (v) retaliation under 42 U.S.C. § 1983 and the First Amendment; (vi) discrimination on the basis of religion under Title

VII of the 1964 Civil Rights Act of 1964 as amended 42 U.S.C. § 2000(e) *et seq.* ("Title VII"), (viii) retaliation under Title VII, violation of the Free Exercise Clause of the First Amendment of the Constitution of the State of New York ('State Const. First Amend."); (ix) violation of Equal Protection rights under the State Const. First Amend.; (x) discrimination and disparate treatment based on religion, Article 15 of the Executive law the New York State Human Rights Law ("NYSHRL") § 296, *et seq.*; (xi) retaliation under NYSHRL; (xii) aiding and abetting under NYSHRL; and (xiii) any other claims(s) that can be inferred from the facts set forth herein.

2. Plaintiff seeks monetary relief including, but not limited to: compensatory and punitive damages; attorney's fees and the costs of this action; together with any and all other appropriate legal and equitable relief pursuant to applicable state and federal law.

3. Costs, expert witness fees and attorney's fees are sought pursuant to 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

4. This Court has jurisdiction as this case involves a federal question under The United States Constitution, 42 U.S.C. § 1983, Title VII, 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

5. This Court has supplemental jurisdiction under the State laws of New York. This Court has supplemental jurisdiction over Plaintiff's related claims arising under the NYSHRL and any and all state and local law pursuant to 28 U.S.C. §1367 (a).

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b). The acts and transactions complained of herein occurred in this District, and Defendants were and are located in this District.

7. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about February 6, 2023, against Defendant the New York State Department of Civil Service. (EEOC Charge No. 525-2023-01503).

8. On October 29, 2024, the United States Department of Justice Civil Rights Division issued Plaintiff a Notice of Right to Sue. Annexed hereto as **Exhibit A.**

9. Plaintiff's EEOC charge put Defendant on notice of his claims under NYSHRL and satisfied requirements of the Notice of Claim provisions pursuant to New York General Municipal Law Section 50.

10. Plaintiff has exhausted all administrative remedies, statutory prerequisites, and conditions precedent under federal and state law.

## THE PARTIES

11. Plaintiff, Ahmad Anwar at all relevant times, was and is employed as a New York State Department of Labor ("NYS DOL") senior economist and was and is a resident of the State of New York, County of Rensselaer, and at all relevant times was and is an employee of the State of New York.

12. Defendant New York State Department of Civil Service is a state agency and according to its website acts as "the central personnel agency for the Executive Branch of New York State government, serving approximately 150,000 state employees. [DCS] partners with New York State agencies to offer workforce recruitment and placement services, including developing minimum qualifications, classifying positions, developing civil service examinations, and administering performance assessment tests."[1]

13. Defendant, DCS was and is an employer under Title VII, Sec. 1983 and NYSHRL as it controls the terms and conditions of hiring, promotional exams and minimum qualifications for Plaintiff's job.

[1] https://www.cs.ny.gov/home/agency.overview.cfm, (last accessed January 23, 2025).

14. At all relevant times Defendant Commissioner Timothy R. Hogues was and is the Commissioner of the New York State Department of Civil Service and was and is a resident of the State of New York.

15. At all relevant times Defendant Governor Kathleen Hochul, was and is the Governor of the New York State and head of the State's Executive Branch including the Department of Civil Service and was and is a resident of the State of New York.

16. At all relevant times Defendant Pasquale "Pat" Sullo was and is employed by the New York State Department of Civil Service as a Human Resource Specialist 4 (Testing), Testing Systems and Support, and was and is a resident of the State of New York.

**BACKGROUND FACTS**

17. Plaintiff commenced his employment with the NY DOL in or about May 2017 as an economist and held the title of "economist trainee 1" for his first year, then held the position of "economist trainee 2" for his second year and has held and currently holds the position of "Senior Economist" since around 2019.

18. Prior to his hire, Plaintiff was required to take a DCS administered exam for his position.

19. Plaintiff passed the exam and obtained his position at the NYS DOL where he excelled at his job and garnered praise and support from his colleagues.

20. Plaintiff sought to advance his career at the NYS DOL and sought to obtain the position of "Associate Economist" which required a DCS administered written examination for the position.

21. The associate/principal economist commanded higher authority, and a higher salary, benefits and pension than Plaintiff's current position

22. Plaintiff's religion is Islam.

23. Plaintiff is a devout Muslim.

24. Plaintiff disclosed to Defendants that he was a person of faith.

25. Plaintiff maintains sincerely held beliefs that command him to observe religious practices such as prayer and fasting.

26. Plaintiff observes Ramadan[2], during which he is required to fast by abstaining from all food or drink during the day.

27. Each Ramadan lasts 30 days. For example, and relevant to Plaintiff's Complaint, in 2022, Ramadan was observed from Monday, April 2, 2022, until the evening of Wednesday, May 2, 2022. [3]

28. During Ramadan, due to Plaintiff's fasting, Plaintiff loses mental focus and experiences physiological impacts on his health and wellbeing, especially if required to take perform continuous mentally strenuous tasks without accommodation such as a written promotional exam administered by DCS.

29. DCS, through its Testing Services Division, administers civil service examinations for a wide variety of State government positions on scheduled examination dates held several times each year.

---

[2] "Ramadan is the ninth month of the Muslim calendar, is one of the most sacred times for Muslims. It is the month in which it is believed that the Holy Qur'an was sent down from heaven "as a guidance for men and women, a declaration of direction, and a means of salvation." During this month, Muslims observe a strict fast from dawn until sunset. They are not allowed to eat or drink (even water) during daylight hours. Fasting is a private act of worship bringing about nearness to God, as well as a form of spiritual discipline and a means to empathize with those less fortunate. The fast is broken at the end of the day with prayer and a festive meal called an iftar. It is customary to visit family and friends following the iftar. During Ramadan, many Muslims go to the mosque and spend several hours praying. In addition to the five daily prayers that are part of the core of Islam, Muslims recite a special prayer called the Tarawih prayer (night prayer). On the evening of the 27th day of Ramadan, Muslims observe a special night called Layat al-Qadr, sometimes referred to as the Night of Power. It is believed that Muhammad first received the Holy Qur'an on this night. At the end of Ramadan, Eid al-Fitr celebrates the breaking of the fast. Friends and families gather for festive meals and exchange gifts. Special gifts are also given to the poor." https://www.brandeis.edu/spiritual-life/resources/guide-to-observances/ramadan.html (last accessed January 23, 2025).

[3] https://www.anera.org/blog/ramadan/ (last accessed January 23, 2025).

30. The role of the Testing Services Division is to administer civil service examinations for a wide variety of State government positions on scheduled examination dates held several times each year. The Testing Services Division, through its Test Administration Unit ("TAU"), is responsible for processing accommodation requests from examination candidates in accordance with federal and state laws and regulations.

31. The TAU's role is to process accommodation requests based on religious accommodation or observance and has a policy of reasonable accommodation in testing, providing a variety of accommodations for many candidates for various reasons, (religion, disability, etc.).

32. Candidates for exams such as Plaintiff are required to notify the Test Administration Unit of their need for an alternate test date with supporting documentation and reasoning for the request.

33. In or around March 2022, DCS announced that the written promotional exam for the Associate Economist was scheduled for April 30, 2022.

34. The written exam for Associate Economist was primarily for current eligible state employees who were on a limited eligibility list for the specialized role of Associate Economist. Plaintiff was one of a handful of candidates who were eligible for this promotional exam and registered to take the written test.

35. Plaintiff provided DCS his "admission notice" that he sought to take the written test on or about April 12, 2022.

36. In April 2022, after Plaintiff submitted his "admission notice" to DCS, Plaintiff made DCS that he needed to take the test on May 1, 2022, instead of April 30, 2022, Plaintiff provided a reason for his request as childcare needs because he wanted to spend time with his family during Ramadan.

37. DCS denied Plaintiff's request to take the exam on May 1, 2022.

38. On April 26, 2022, Plaintiff called DCS and specifically requested religious accommodation to take the exam on proposed dates May 7-8, 2022.

39. Plaintiff explained to DCS his need for a religious accommodation after he realized (because Ramadan dates change every year) that the last day of Ramadan, Eid al-Fitr was on May 1, 2022, and instead informed DCS that he required religious accommodation and proposed alternate exam dates of May 7 or 8, 2022.

40. Further, Plaintiff emailed Defendant DCS the following written request for religious accommodation for alternate examination dates during Ramadan. Plaintiff wrote: "My name is Ahmad Anwar, I am a state employee trying to take a promotional exam this Saturday (Associate Economist). However I am requesting a religious accommodation do to the fact that it is Ramadan and as an observing Muslim I will be fasting (no food, drink, and limited sleep). This will put me at a disadvantage while taking the exam and will be unfair to me.If the last day of Ramadan happens to be the day before then the next two days is the most holy holiday of Eid and I would be at the Mosque for prayer. I am requesting an accommodation to take the exam the week following (May 7th-8th)."

41. DCS Testing Services Division, Accommodations Unit employee Erika Morrisette ("Ms. Morisette"), communicated the denial Plaintiff's request for religious accommodation on April 27, 2022.

42. On April 27, 2022, Ms. Morrisette failed to provide any rationale or reason for the denial of Plaintiff's request and wrote to Plaintiff via email: "Good morning Ahmad, We have reviewed your request for a religious accommodation and your request for an alternate test date has been denied. Please refer to your admission notice for the date, time and location of your examination."

43. DCS regularly grants similar accommodation requests for individuals with disabilities for example, candidates who tested positive for COVID-19 (during 2022) were required to quarantine for at least 10 days in most instances and were accommodated for exam scheduling.

44. In other words, DCS provided and has a policy of providing accommodations for testing dates, like the Plaintiff's request to move the exam date one week out, to individuals with disabilities and not religious based requests.

45. Further, non-Muslim religious requests are regularly granted.

46. Plaintiff informed DCS of his religious practices and observance of Ramadan and requested a religious accommodation to take the exam on May 7 -8, 2022, yet DCS failed to engage in the interactive process with Plaintiff and summarily denied his request in an arbitrary and capricious unlawful manner.

47. DCS failed to follow its own internal policies for granting accommodation requests.

48. DCS generally has a policy to make "special arrangements" for testing candidates and is supposed to utilize the below analysis for requests for religious accommodation that:

> "1. Are similar to the type of accommodation which would or could typically be made for employees serving in the titles for which the examination is being held, and
>
> 2. Do not compromise the competitive examination of the examination,
>
> 3. Do not require the unnecessary postponement or rescheduling of the examination, and
>
> 4. Do not require more than three extra days of staff time to implement, and
>
> 5. Do not require the Department to purchase or rent equipment or services which will have only
>
> an uneconomic use, and
>
> 6. Do not otherwise impose an undue hardship on the Department's examination program."

49. Plaintiff's religious accommodation request to take the test on May 7 or 8, 2022 was reasonable and did not create an undue hardship for DCS, and did not compromise the competitiveness of the exam, nor did his request require unnecessary postponement or rescheduling of the exam to an unreasonable date.

50. The determination to deny Plaintiff's religious accommodation request was issued prior to the Supreme Court's decision in *Groff v. DeJoy*, 143 S. Ct. 2279 (2023). The *Groff* opinion clarified[4] that "showing 'more than a *de minimis* cost'…does not suffice to establish undue hardship under Title VII." Instead, the Supreme Court held that "undue hardship is shown when a burden is substantial in the overall context of an employer's business," "tak[ing] into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer."

51. During the same time (2022) candidates with disabilities (COVID-19 quarantine) were regularly accommodated for COVID-19 accommodation and other health related accommodations.

52. There is no set deadline for an applicant to request an accommodation, considering individual candidates have requested scheduling accommodation after testing positive for COVID-19 close to the scheduled exam date (i.e. upon information and belief candidates have tested

[4] In *Groff v. DeJoy*, 143 S. Ct. 2279 (2023), a unanimous Supreme Court clarified that Title VII requires an employer that denies a religious accommodation to show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business. Title VII prohibits discrimination based on religion, and subsequent regulations issued by the EEOC required employers to make reasonable accommodation of an employee's religious beliefs unless doing so would cause "undue hardship" to the employer. In *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977), the Supreme Court established a "more than *de minimis*" test for hardship that courts interpreted to mean that any cost or hardship "more than de minimis" justifies denying a religious accommodation. *Groff* revisited that interpretation; the Court rejected the "*de minimis* cost" standard and adopted instead a "**substantial increased costs**" standard consistent with the spirit and language of Title VII.

positive for COVID-19 or learned of close contact with a person who contracted COVID-19 requiring isolation and quarantine for a certain number of days given the applicable regulation.

53. Plaintiff made it clear to Defendants that his request for accommodation was religious.

54. Defendants did not communicate to Plaintiff that his request was untimely or too close to the test date to be considered. Rather, Defendants simply denied Plaintiff's request leaving him no choice other than to take the exam on April 30, 2022, while required to fast on the eve of Eid al-Fitr the last day of Ramadan.

55. Plaintiff fasted on April 30, 2022, and took the exam during the exam, Plaintiff felt lightheaded, lost focus and experienced impairment due to lack of food or water.

56. Mr. Anwar failed the test with a score of 60 because his physical condition during the exam was affected by fasting for Ramadan. This fasting caused him to lose focus due to the deprivation of food, water, and sleep, which impacted his performance on the examination.

57. A passing score for the exam was 70.

58. Defendants' choice not to accept or engage in an interactive process / cooperative dialogue with Plaintiff and other similarly situated individuals who submitted religious accommodation requests, but to grant medical requests without regard to Plaintiff's rights under Title VII, the Constitution and Sec. 1983 violates the Equal Protection Clause of the Fifth and Fourteenth Amendments of the Constitution of the United States and state and local law.

59. The process utilized by Defendants have failed to articulate the reason why Plaintiff's accommodation request was denied or how granting his accommodation was unduly burdensome test, or under an equal protection challenge satisfy the much more difficult business necessity test.

60. By failing to consider reasonable religious accommodations, Defendants have deprived Plaintiff of his constitutionally protected rights to equal protection and religious exercise.

61. Defendants have engaged in overt acts to deprive Plaintiff of his civil rights by failing to engage in the interactive process on alternate test dates during Ramadan.

62. Defendants' actions in denying the religious accommodations during Ramadan deprive Plaintiff of the equal protection of the laws guaranteed by the United States Constitution.

63. At all relevant times, Defendants are responsible for complying with federal and state law Defendant failed and refused to provide Plaintiff with the option of a reasonable accommodation of his religious observance, practice, and belief which precludes him from complying with testing requirements as an imposed condition of employment disparately affected religious Muslims during Ramadan.

64. The Defendants created policies failed and refused to eliminate the discriminatory policies and practices and remedy the effects in the Plaintiff's situation because he is a Muslim.

65. DCS has not administered an exam for the Associate Economist position since the April 30, 2022, examination.

66. Further, there is no guarantee of when DCS will schedule the next examination because the need of the Associate Economist position is limited and only holds examinations when there are job openings or vacancies or otherwise required by the NYS DOL.

67. Had DCS granted Plaintiff's religious accommodation Plaintiff would not have been under religious fasting as proscribed by Plaintiff's deep Islamic faith and most likely would have had the physical ability and mental focus through regular rest and nourishment to competitively take the test like any other candidate was afforded the ability to do.

68. Plaintiff would have most likely obtained the Associate Economist position had Defendant granted the accommodation request based on religion during Ramadan.

69. Due to Defendants' actions, Plaintiff has suffered economic and emotional damages as a result.

70. On or about January 12, 2023, Plaintiff inquired with DCS via email about more details for the reason of the denial of his April 26, 2022 religious accommodation and sought guidance on what DCS's policy officially was on alternate test date accommodations during Ramadan, Plaintiff wrote: "I know this was some time ago. But I am wondering if I can get some clarification as to why I was denied the religious accommodation? I know you said something along the lines of fasting not being accepting reasoning but I am asking for future reference so I don't encounter this again."

71. Defendant Sullo responded to Plaintiff confirming that DCS does not accommodate religious requests for alternate test dates during Ramadan.

72. Defendant Sullo wrote: "Good afternoon Mr. Anwar, According to the New York State Department of Civil Service Alternate Test Date Policy, an alternate test date will be provided for a candidate who can establish a religious belief which precludes a candidate from taking an examination on the announced test date. After careful consideration of the practices associated with the religious observance of Ramadan, the New York State Department of Civil Service has determined that Ramadan does not preclude a candidate from taking an examination. Therefore, Ramadan does not qualify a candidate for an alternate test date."

73. The Defendants do not consider Ramadan to be a legitimate religious observance entitled to protections under the law.

74. Without any basis the Defendants have determined that Ramadan does not "preclude" a candidate from taking an examination, however reasonable requests for religious accommodation should be made on a case-by-case basis.

75. Defendant DCS treats Ramadan as a categorically insufficient religious observance for purposes of alternate test date requests without regard to the particularized nature of each request.

76. Defendants actions violate Plaintiff's rights to the practice of his religion and the right to be free from discrimination due to religion.

## THE FIRST CAUSE OF ACTION FOR VIOLATION OF RELIGIOUS LIBERTY UNDER THE FIRST, FIFTH AND FOURTEENTH AMENDMENTS PURSUANT TO 42 USC §1983 - U.S. CONSTITUTION) (FREE EXERCISE)

77. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

78. Defendants, as state actors, have imposed an unconstitutional burden on Plaintiff's exercise of religion through their failure to accommodate religious practices for alternate testing dates. The burden imposed on Plaintiff's exercise of religious is substantial, in that the Defendants' failure to accommodate during Ramadan discriminates against Plaintiff because of his religion, has caused severe economic distress on Plaintiff and continues to cause Plaintiff enduring mental anguish and emotional distress concerning proximately caused by the vaccine mandate.

79. The failure to accommodate alternate examination dates is not neutral to religion and is not generally applicable in that it favors individuals with requests for medical accommodations for exemption to the mandate but does not provide for religious accommodation.

80. Defendants worked in concert with the DCS in enforcing the lack of accommodation for Muslims during Ramadan for alternate examination dates.

81. Accordingly, the First, Fifth and Fourteenth Amendments require that Defendants compensate them for any and all damages including compensatory damages, back pay, reputational damages, damages for emotional trauma and distress, punitive damages, reasonable attorneys' fees and costs of the action, pre- and post-judgment interest.

## THE SECOND CAUSE OF ACTION
## FOR VIOLATION OF THE FIFTH AND FOURTEENTH AMENDEMENT'S EQUAL PROTECTION CLAUSE

82. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

83. Defendants acting in concert implemented the vaccine mandate and did not provide religious accommodation exemptions to Plaintiff and other similarly situated employees but granted medical accommodation requests.

84. At all relevant times Defendants actions were taken under color of law.

85. The individual named Defendants acting as agents, arms, and effectively a targeted a class of persons on the basis of their religion, including Plaintiff.

86. Defendant failed to engage in an interactive process with Plaintiff and other similarly situated individuals who submitted religious accommodation requests, but to grant medical requests for alternate testing dates without regard to Plaintiff's rights under the Constitution and Title VII violates the Equal Protection Clause of the Fifth and Fourteenth Amendments of the Constitution of the United States, and state and local law.

87. The process utilized by Defendants to deny Plaintiff's and presumably all legitimate religious requests for alternate examination dates during Ramadan under Title VII must satisfy the unduly burdensome test, must under an equal protection challenge satisfy the much more difficult business necessity test.

88. Under strict scrutiny, it also must be very narrowly tailored or the least restrictive means for achieving the compelling objective.

89. Even under the rational basis standard, the targeting of one sector (religious accommodation seekers, primarily Muslim exam candidates during Ramadan) for denial of religious accommodation is not rational.

90. By failing to consider reasonable religious accommodations, Defendants have deprived Plaintiff of their constitutionally protected rights to equal protection and religious exercise.

91. Defendants have engaged in overt acts to deprive Plaintiff of his civil rights by failing to engage in the interactive process and impacting Plaintiff's employment by offering no alternate examination dates for the position he sought.

92. Defendants' actions in denying the religious accommodate request for alternate examination dates deprive Plaintiff of the equal protection of the laws guaranteed by the United States Constitution.

THE THIRD CAUSE OF ACTION FOR VIOLATIONS OF 42 U.S.C. § 1983

93. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

94. All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

95. All of the aforementioned acts deprived Plaintiff of his rights, privileges and immunities guaranteed to citizens of the United States by the First, Fifth, and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

96. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as State employees, with all the actual and/or apparent authority of the State of New York attendant thereto.

97. All acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of DCS, all under the supervision the Executive of the State of New York Defendant Hochul,

Commissioner of the New York Department of Civil Service Defendant Hogues and Defendant Morrisette and all lower ranking subordinates in the DCS.

98. Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

99. The acts complained of deprived Plaintiff of his rights to be free of religious discrimination.

100. Defendant DCS, deprived Plaintiff equal protection under the law based on his religion.

101. Plaintiff has suffered damages as a result of said violations.

## THE FOURTH CAUSE OF ACTION
## FOR VIOLATIONS OF 42 U.S.C. § 1983
## MONELL LIABILITY

102. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

103. At all times alleged herein, the individually named employees and named Defendants were employed by DCS, acting on its behalf, and within the scope of their employment.

104. At all times alleged herein, the individually named employees and named Defendants failed to uphold Plaintiff's religious liberties/rights when it chose to disparately enforce the DCS policies and procedures regarding alternate examination dates for individuals seeking religious accommodation.

105. At all relevant times the individually named Defendants/employees violated Sec. 1983 and the U.S. Constitution when they denied his religious accommodation request in an arbitrary and capricious manner which forced him to take a promotional exam during Ramadan fasting.

106. Throughout Plaintiff's employ, Defendants executed official policies enacted/enforced by the individual Defendants to the detriment of Plaintiff's religious rights by denying his accommodation request without a rational basis or adequate interactive process.

107. At all times alleged herein, the individually named Defendants possessed final decision making authority and were policymakers as defined by Sec. 1983.

108. Defendants' actions described above directly and proximately have caused and continue to cause Plaintiff to suffer damages.

## THE FIFTH CAUSE OF ACTION FOR RETALIATION UNDER 42 U.S.C. § 1983 AND THE FIRST AMENDMENT

109. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

110. Plaintiff engaged in protected activities when he requested religious reasonable accommodation to the Defendants.

111. Plaintiff engaged in protected activities when he contested the Defendants' denial of his religious reasonable accommodation to the Defendants' failure to provide alternate examination dates during Ramadan.

112. As described herein, Plaintiff experienced retaliation, was forced to take an examination for promotion during Ramadan fasting without regard to his religious observances.

113. Plaintiff engaged in protected activity and suffered an adverse employment action within close proximity to his protected activity.

114. By the acts and practices above, the Defendants retaliated against Plaintiff for engaging in protected activities, in violation of 1983 and the First Amendment.

115. Defendants' actions described above directly and proximately have caused and continue to cause Plaintiff to suffer damages.

## THE SIXTH CAUSE OF ACTION FOR RELIGIOUS DISCRIMINATION UNDER TITLE VII

116. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

117. Title VII states in relevant part as follows: SEC. 2000e-2. [Section 703] (a) Employer practices: It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . .

118. Defendant DCS engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by allowing discrimination based on religion.

119. Defendant DCS violated the above and Plaintiff suffered numerous damages as a result.

## THE SEVENTH CAUSE OF ACTION FOR RETALIATION UNDER TITLE VII

120. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

121. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

122. Defendant DCS engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of his opposition to the unlawful employment practices of Defendant DCS.

123. Defendant DCS violated the above and Plaintiff suffered numerous damages as a result.

THE EIGHTH CAUSE OF ACTION
FOR VIOLATION OF THE NEW YORK CONSTITUTION ARTICLE I, §6-7

124. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

125. Under NY Constitution Article I, §6 the state may not infringe on certain enumerated rights.

126. Under NY Constitution Article I, §7 no person may be deprived of life, liberty, or property without due process of the law.

127. Defendants violated Plaintiff's right to religious liberty by discriminating on the basis of religion when they denied Plaintiff's religious accommodation request and refused to permit religious accommodations during Ramadan without a rational basis.

128. Defendants failed to provide Plaintiff due process in their arbitrary and capricious determination to deny Plaintiff's religious accommodation.

129. Plaintiff had a property interest in continued employment. Respondents violated Petitioner's substantive due process rights.

130. Defendants' failure to accommodate for religious reasons alternate examination dates during Ramadan constitutes a deprivation of property under due process of law.

131. Defendants denied Plaintiff his rights under NY Const. Article I, §7.

THE NINTH CAUSE OF ACTION FOR VIOLATION OF THE NEW YORK CONSTITUTION ARTICLE I, §11 FOR EQUAL PROTECTION UNDER THE LAW

132. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

133. Under the NY Constitution Article 1, §11 "No person shall be denied the equal protection of the laws of this state or any subdivision thereof."

134. According to the New York Constitution: "No person shall, because of race, color, creed or religion, be subjected to any discrimination in his or his civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or sub division of the state."

135. By reason of the aforementioned acts, policies, practices, customs and procedures created, adopted, and enforced under color of state law, Defendants discriminated against Plaintiff because he is a Muslim in violation of the laws.

136. Plaintiff will not participate and allow this to continue in violation of the Equal Protection of Laws Clause of the New York Constitution. Defendants violated Plaintiffs right to freely exercise his religion by mandating promotional testing without alternate examination date accommodation that substantially interferes with Plaintiffs right to the free exercise of his religion and altering the accommodation process to leave Plaintiff with no option but to take the promotional exam without accommodation.

137. Defendants violated Plaintiff's right to religious liberty and violated federal/state/local law when they denied Plaintiff's religious accommodation request.

138. Plaintiff as in individual seeking a religious accommodation was treated differently than individuals seeking medical accommodation for alternative examination dates.

139. Defendants denied Plaintiff's rights for equal protection under NY Const. Article I, §11.

## THE TENTH CAUSE OF ACTION DISCRIMINATION UNDER NEW YORK STATE HUMAN RIGHTS LAW (AGAINST ALL DEFENDANTS)

140. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

141. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national

origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

142. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff based on religion, requests for religious accommodation.

143. Plaintiff hereby makes a claim against all Defendants under all of the applicable paragraphs of Executive Law Section 296.

## THE ELEVENTH CAUSE OF ACTION<br>FOR RETALIATION UNDER<br>NEW YORK STATE HUMAN RIGHTS LAW

144. Plaintiff suffered damages as a result and Plaintiff seeks damages as a result of Defendants' unlawful conduct. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

145. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

146. Defendants engaged in an unlawful discriminatory practice by creating a hostile work environment based on religion and wrongfully retaliating against Plaintiff.

147. Plaintiff suffered damages as a result.

## THE TWELFTH CAUSE OF ACTION<br>FOR AIDING AND ABETTING UNDER<br>NEW YORK STATE HUMAN RIGHTS LAW

148. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

149. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

150. The Individual Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

151. Plaintiff suffered damages as a result.

## **DEMAND FOR A JURY TRIAL**

152. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demands a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A. A judgment declaring that the practices complained of herein are unlawful and inwillful violation of the aforementioned federal; and state laws;

B. Awarding Plaintiff compensatory damages;

C. Awarding Plaintiff punitive damages;

D. Awarding Plaintiff costs and disbursements incurred in connection with this action,including reasonable attorneys' fees, expert witness fees, and other costs;

E. Pre-judgment and post-judgment interest, as provided by law; and

F. Granting Plaintiff further relief as this Court finds necessary and proper.

Dated: New York, New York
January 24, 2025

Respectfully submitted,

By: Christopher J. Berlingieri

CHRISTOPHER J. BERLINGIERI, ESQ. (519324)
BERLINGIERI LAW, PLLC
Attorney for Plaintiff
244 Fifth Avenue, Suite F276
New York, New York 10001
Tel.: (347) 766-5185
Fax: (914) 730-1044
Email: cjb@nyctlaw.com

# EXHIBIT A

U.S. Department of Justice
Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL

*150 M Street, N.E.*
*Karen Ferguson , EMP, 4CON, Room 9.514*
*Washington, DC 20530*

October 29, 2024

Mr. Ahmad Anwar
c/o Stephen Bergstein, Esquire
TBU Law
5 Paradies Lane
New Paltz, NY 12561

Re: EEOC Charge Against New York State Dept. of Civil Service, et al.
No. 520202303383

Dear Mr. Anwar:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC New York District Office, New York, NY.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Kristen Clarke
Assistant Attorney General
Civil Rights Division

by /s/ Karen L. Ferguson
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: New York District Office, EEOC
New York State Dept. of Civil Service, et al.