**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

AHMAD ANWAR,

*Plaintiff*,

v. 1:25-cv-00120 (AMN/PJE)

NEW YORK DEPARTMENT OF CIVIL SERVICE, COMMISSIONER TIMOTHY R HOGUES, GOVERNOR KATHLEEN HOCHUL, AND PASQUALE SULLO, in their Individual and Professional Capacities,

*Defendants*.

---

**APPEARANCES:** **OF COUNSEL:**

**BERLINGIERI LAW PLLC**
244 Fifth Avenue, Suite F276
New York, New York 10001
*Attorney for Plaintiff*

**CHRISTOPHER J. BERLINGIERI, ESQ.**

**HON. LETITIA JAMES**
New York State Attorney General
The Capitol
Albany, New York 12224
*Attorneys for Defendants*

**MATTHEW J. GALLAGHER, ESQ.**

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

On November 13, 2025, plaintiff Ahmad Anwar ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Constitution, and the New York State Human Rights Law ("NYSHRL") against Defendants Timothy R. Hogues ("Commissioner Hogues"), Governor Kathleen Hochul ("Governor Hochul"), Pasquale Sullo ("Defendant Sullo"; together with

Commissioner Hogues and Governor Hochul, the "Individual Defendants"), and the New York State Department of Civil Service ("NYSDCS"; together with the Individual Defendants, "Defendants"),[1] alleging violations of his rights under the First, Fifth, and Fourteenth Amendments, Title VII, and New York State law as a result of two denials of his requests for religious accommodations in connection with a civil service examination administered by Defendant NYSDCS. Dkt. No. 1 ("Complaint").

Presently before the Court is Defendants' motion to dismiss the Complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure ("Rule 12"). Dkt. No. 17 ("Motion"). Plaintiff partially opposed the Motion, Dkt. No. 21,[2] and Defendants filed a reply in further support, Dkt. No. 22. For the reasons set forth below, the Court grants Motion.

## II. BACKGROUND

Unless otherwise noted, the following facts are drawn from the Complaint, its attachments, or materials it incorporates by reference, and are assumed to be true for purposes of ruling on the Motion, *see Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund. v. New York City Dep't of Educ.*, 9 F.4th 91, 94 (2d. Cir. 2021) (*per curiam*), or are otherwise matters of public record, *see Williams v. New York City Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020).

---

[1] Paragraph 97 of the Complaint refers to an additional individual, Erika Morrisette, as "Defendant Morrisette." Dkt. No. 1 at ¶ 97. Ms. Morrisette's name does not appear in the caption, Plaintiff does not identify her as a party to this action elsewhere in the Complaint, and the Docket does not indicate that she has been served. *See* Dkt. No. 1; *see generally* Docket Sheet. Accordingly, the Court assumes that Ms. Morrisette is not a party to this action.

[2] Plaintiff asserts that he "opposes in full" Defendants' Motion, Dkt. No. 21 at 1; he nevertheless subsequently concedes that his "claims under Title VII only apply to Defendant NYSDCS," *id.* at 9. Insofar as the Complaint can be read as bringing Title VII claims against the Individual Defendants, the Court interprets Plaintiff's Opposition as conceding to Defendants' Motion with respect to those causes of action.

### A. The Parties

Plaintiff is a Senior Economist for the New York State Department of Labor ("NYSDOL") and a resident of the State of New York, County of Rensselaer. Dkt. No. 1 at ¶ 11.

Defendant NYSDCS is the central personnel agency for the Executive Branch of New York State government, serving approximately 150,000 employees. *Id.* at ¶ 12 (quoting DEP'T OF CIV. SERV., *Agency Overview*, https://www.cs.ny.gov/home/agency.overview.cfm (last visited Aug. 26, 2026)). NYSDCS partners with New York State agencies to offer workforce recruitment and placement services, including developing minimum qualifications, classifying positions, developing civil service examinations, and administering performance assessment tests. *Id.*

Commissioner Hogues is the Commissioner of the New York State Department of Civil Service and a resident of the State of New York. *Id.* at ¶ 14.

Governor Hochul is the Governor of the State of New York and head of New York State's Executive Branch and a resident of the State of New York. *Id.* at ¶ 15.

Defendant Sullo is employed as a Human Resource Specialist 4 (Testing), Testing Systems and Support, for Defendant NYSDCS and a resident of the State of New York. *Id.* at ¶ 16.

### B. Plaintiff's Factual Allegations

Plaintiff was hired by NYSDOL in or around May 2017. *Id.* at ¶ 17. He began his employment as an "Economist Trainee 1" and held that position for his first year of employment. *Id.* Prior to obtaining employment with NYSDOL, Plaintiff was required to take, and ultimately passed, an examination administered by NYSDCS for his position. *Id.* at ¶¶ 18-19. Plaintiff held the position of "Economist Trainee 2" during his second year of employment with NYSDOL and has held the position of "Senior Economist" since around 2019. *Id.* at ¶ 17.

Plaintiff identifies as a devout Muslim. *Id.* at ¶¶ 22-23. During the Muslim holy month of Ramadan, he, like many practicing Muslims, observes a strict fast from all food and drink from sunrise to sunset, in accordance with his sincerely held beliefs. *Id.* at ¶¶ 25-26, n.2. While fasting, Plaintiff experiences mental and physiological impacts, including loss of mental focus. *Id.* at ¶ 28. In 2022, Ramadan was observed from Monday, April 2, 2022 until the evening of Wednesday, May 2, 2022. *Id.* at ¶ 27.

At some point, Plaintiff decided to pursue a promotion to the "Associate Economist" position within NYSDOL, which entails greater authority and offers greater salary, benefits, and pension than his Senior Economist position. *Id.* at ¶¶ 20-21. Applicants to the "Associate Economist" position are required to pass a written examination administered by the Testing Services Division of NYSDCS. *Id.* at ¶ 20.

In March 2022, NYSDCS announced that it had scheduled an examination for the NYSDOL Associate Economist position for April 30, 2022 (the "Examination"). *Id.* at ¶ 33. On April 12, 2022, Plaintiff notified NYSDCS that he intended to take the Examination. *Id.* at ¶ 35. Plaintiff later contacted NYSDCS to request to take the Examination on May 1, 2022, instead of April 30, 2022, citing childcare needs and a desire to spend time with family during Ramadan. *Id.* at ¶ 36. NYSDCS denied this request.[3] *Id.* at ¶ 37.

On April 26, 2022, Plaintiff contacted NYSDCS to request a religious accommodation that would allow him to take the Examination on May 7 or 8, 2022. *Id.* at ¶¶ 38-39. Plaintiff also emailed NYSDCS a written version of substantially the same request, noting that his abstention from food and drink, along with limited sleep due to religious observance, would "put [Plaintiff]

[3] It is unclear from the face of the Complaint who at NYSDCS denied this request, when this decision was made, or how the denial was communicated to Plaintiff. *Id.*

at a disadvantage while taking the [Examination]" if he took the Examination as scheduled. *Id.* at ¶ 40. He further noted that during the two days immediately following Ramadan, he "would be at the Mosque for prayer" in observance of Eid al-Fitr.[4] *Id.* On April 27, 2022, an NYSDCS Testing Services Division employee, non-party Erika Morrisette, contacted Plaintiff to inform him that his request had been denied. *Id.* at ¶ 42. Plaintiff did not receive additional explanation. *Id.*

On April 30, 2022, Plaintiff completed the Examination while fasting in observance of Ramadan. *Id.* at ¶ 55. During the Examination, Plaintiff felt lightheaded, lost focus, and otherwise experienced impairment. *Id.* Plaintiff achieved a score of 60 on the Examination; a score of 70 was required to pass. *Id.* at ¶¶ 56-57. Plaintiff was consequently ineligible for and did not receive a promotion to Associate Economist. *See id.* at ¶ 11, 68.

Over seven months later, on January 12, 2023, Plaintiff again contacted NYSDCS via email to request additional details about the denial of his request for accommodation in connection with the Examination, "for future reference." *Id.* at ¶ 70. Defendant Sullo responded, explaining that "an alternate test date will be provided for a candidate who can establish a religious belief which *precludes* a candidate from taking an examination on the announced date," per NYSDCS policy, but that NYSDCS determined that "Ramadan does not *preclude* a candidate from taking an examination." *Id.* at ¶ 72 (emphases added).

Since the Examination, NYSDCS has not administered another examination for the Associate Economist position. *Id.* at ¶ 65. Plaintiff explains that there is "no guarantee of when [NYSDCS] will schedule the next examination" because NYSDCS only holds examinations when there are relevant job openings or vacancies, or as otherwise required by NYSDOL. *Id.* at ¶ 66.

[4] Eid al-Fitr, or "Eid," is a holiday that follows Ramadan and involves breaking the fast, gathering with friends and family, and exchanging gifts. *Id.* at ¶ 26, n.2

Plaintiff asserts that the foregoing was "carried out by [the Individual Defendants] . . . under the supervision [of Governor] Hochul, [Commissioner] Hogues, and [non-party Erika] Morrisette," as well as "all lower ranking subordinates in [NYSDCS]." *Id.* at ¶ 97.

**C. Plaintiff's Legal Claims**

Based on these allegations, the Complaint asserts twelve causes of action. Dkt. No. 1 at ¶ 1. Plaintiff brings five claims pursuant to Section 1983: (i) violation of Plaintiff's religious liberty under the First, Fifth, and Fourteenth Amendments, *id.* at ¶¶ 77-81; (ii) violation Plaintiff's right to equal protection under the law pursuant to the Fifth and Fourteenth Amendments, *id.* at ¶¶ 82-92; (iii) violation of Section 1983 generally, *id.* at ¶¶ 93-101; (iv) violation of Section 1983 triggering *Monell* liability, *id.* at ¶¶ 102-108; and (v) retaliation under Section 1983 and the First Amendment, *id.* at ¶¶ 109-115. He further brings two claims pursuant to Title VII: (vi) religious discrimination in violation of 42 U.S.C. § 2000e-2, *id.* at ¶¶ 116-119; and (vii) retaliation in violation of 42 U.S.C. § 2000e-3(a), *id.* at ¶¶ 120-123. He also asserts two claims under the New York State Constitution: (i) deprivation of liberty and property without due process in violation of New York State Constitution Article I, §§ 6-7, *id.* at ¶¶ 124-131; and (ii) violation of Plaintiff's right to equal protection under the law pursuant to New York State Constitution Article I, § 11, *id.* at ¶¶ 132-139. Finally, Plaintiff asserts three claims pursuant to the NYSHRL: (i) discrimination on the basis of religion in violation of New York State Executive Law § 296, *id.* at ¶¶ 140-143; (ii) retaliation in violation of New York State Executive Law § 296(7), *id.* at ¶¶ 144-147; and (iii) aiding and abetting the foregoing violations of NYSHRL, in violation of § 296(6), *id.* at ¶¶ 148-151. The Complaint appears to bring all claims against NYSDCS and against all the Individual Defendants in their individual and official capacities. *See id.* at 1. Plaintiff seeks a declaratory judgment; compensatory and punitive damages; costs, disbursements, and attorneys'

fees; pre- and post-judgment interest; and further relief as the Court finds necessary and proper. *Id.* at 23.

## III. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief. *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). This presumption, however, does not extend to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (quotation omitted). Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *id.* at 570.

## IV. DISCUSSION

The Motion requests an order dismissing the Complaint in its entirety. *See generally* Dkt. No. 17. As an initial matter, Plaintiff has conceded that he does not assert a Title VII claim against the Individual Defendants. Dkt. No. 21 at 9[5]; *see also Worley v. Simon Meyrowitz & Meyrowitz, P.C.*, No. 23-187-cv, 2023 WL 8664375, at *3 (2d Cir. Dec. 15, 2023). Accordingly, the Court grants the Motion as to these two claims insofar as they are brought against the Individual Defendants. The Court addresses the parties' arguments regarding the remaining claims below.

### A. Section 1983 Claims

As noted above, Plaintiff purports to sue the Individual Defendants in both their individual and professional capacities. *See* Section II.C, *supra*. The Complaint is unclear as to whether certain claims are brought against the Individual Defendants in only their individual or official capacities. For purposes of its analysis, the Court assumes that each of Plaintiff's five Section 1983 claims are brought against each Individual Defendant in both their individual and official capacities and therefore analyzes the sufficiency of each type of claim.

#### 1. Sovereign Immunity

Defendants argue that the Section 1983 claims against NYSDCS and the Individual Defendants in their official capacities should be dismissed because the Court lacks subject matter jurisdiction pursuant to the doctrine of sovereign immunity and the Eleventh Amendment. Dkt. No. 17-2 at 10-11 (citing U.S. CONST. amend. XI; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Bd. of Tr. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)).

---

[5] Citations referring to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

The parties appear to agree that the doctrine of sovereign immunity generally forecloses a federal court from hearing a suit against a state or an agency or official thereof. Dkt. No. 17-2 at 10; Dkt. No. 21 at 6; Dkt. No. 22 at 4-5; *see Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [sovereign immunity] bar remains in effect when State officials are sued for damages in their official capacity."); *see generally Hans v. Louisiana*, 134 U.S. 1 (1890) (reasoning that the Eleventh Amendment, the nature of sovereignty, and the structure of the Constitution imply a State's immunity from suit by its own citizens).

Plaintiff concedes that "the Eleventh Amendment bars damages suits against states and officials in [their] official capacities" but counters that this immunity does not apply to equitable actions seeking "prospective injunctive relief to halt ongoing federal law violations." Dkt. No. 21 at 6 (citing *Ex parte Young*, 209 U.S. 123, 159-60 (1908)). Plaintiff argues that the Complaint seeks "equitable relief, including injunctions against discriminatory exam policies, alleging ongoing violations of religious rights." *Id.* Defendants, for their part, do not dispute that *Ex parte Young* establishes an exception to sovereign immunity in suits against state officials to secure prospective relief, but counter that the Complaint neither alleges an ongoing violation of federal law, nor seeks relief properly characterized as prospective. Dkt. No. 22 at 4-5 (citing *T.W. v. New York State Bd. of L. Exam'rs*, 110 F.4th 71, 93 (2d. Cir. 2024), *cert. denied*, 145 S. Ct. 2700 (2025); *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635 (2002)); *see Ex parte Young*, 209 U.S. 123 (recognizing exception to state sovereign immunity in actions seeking to enjoin a state official from enforcing a statute claimed to violate federal law).

As a threshold matter, the exception recognized in *Ex Parte Young* applies only to state officials and does not allow suit against agencies of the state. *See Salvana v. New York State Dep't of Corr. & Cmty. Supervision*, No. 25-677, 2026 WL 305091 at *1 (2d Cir. Feb. 5, 2026)

(affirming dismissal of claims for injunctive relief against State agency). The Court accordingly lacks jurisdiction to adjudicate Plaintiff's Section 1983 claims against NYSDCS.[6] This defect in Plaintiff's claims is "substantive rather than merely formal, such that any amendment would be futile." *Mercer v. Schneiderman*, No. 1:11-CV-0490 GTS/DRH, 2011 WL 3652322, *3 (N.D.N.Y. Aug. 18, 2011) (adopting recommendation that Section 1983 claims barred by immunity be dismissed with prejudice); *see Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (finding no abuse of discretion to deny leave to amend where amendment was unlikely to be productive). The Court accordingly grants this portion of the Motion and dismisses Plaintiff's Section 1983 claims against NYSDCS with prejudice.

With respect to the Individual Defendants, Plaintiff's ability to avail himself of the *Ex parte Young* exception turns on whether the Complaint "(1) alleges an ongoing violation of federal law and (2) seeks relief properly characterized as prospective." *Kelsey v. Kessel*, No. 24-1105, 2025 WL 1324213, *1 (2d Cir. May 7, 2025).

As to the first prong of this inquiry, Plaintiff asserts that "Defendants' denial of Plaintiff's Ramadan religious accommodation requests perpetuates discrimination" and therefore constitutes an ongoing violation of the law. Dkt. No. 21 at 6. The text of the Complaint, however, makes clear that the only alleged violation of Plaintiff's rights occurred when his requests were denied in April 2022. Dkt. No. 1 at ¶¶ 36-37 ("[NYS]DCS denied Plaintiff's request" that he be allowed to

---

[6] In addition to the *Ex parte Young* exception, federal case law recognizes two other bases on which a court might retain jurisdiction over a suit against a state or its agencies: unambiguous Congressional abrogation and state consent to suit. *See Vega v. Semple*, 963 F.3d 259, 281 (2d Cir. 2020) ("Absent proper Congressional abrogation or State waiver, the Eleventh Amendment bars a federal court from hearing suits at law or in equity against a State brought by citizens of that State or another."). Neither exception applies here. The Supreme Court has found that Congress did not abrogate state sovereign immunity when it enacted Section 1983, *Quern v. Jordan*, 440 U.S. 332, 343-345 (1979), and nothing in the Complaint suggests that the State of New York consented to suit for purposes of these claims, *see generally* Dkt. No. 1.

take the Exam on May 1 to "spend time with his family during Ramadan"); *id.* at ¶ 46 (NYSDCS "summarily denied [Plaintiff's] request" to take the Exam on May 7 or 8, 2022). Plaintiff alleges that he contacted NYSDCS in January 2023 to request an explanation for the denial "for future reference," *id.* at ¶ 70, and that Defendant Sullo informed him that NYSDCS had "determined that Ramadan does not qualify a candidate for an alternate test date," *id.* at ¶ 72. The Complaint makes clear that "[NYS]DCS has not administered an exam for the Associate Economist position since the April 30, 2022 examination," and "only holds examinations when there are job openings or vacancies or otherwise required by the NYSDOL." *Id.* at ¶¶ 65-66. Accordingly, Plaintiff does not and cannot assert that he is currently subject to an ongoing denial of accommodation, nor that he was when he contacted Defendant Sullo. The alleged violation of Plaintiff's rights was therefore "complete as of the day of the denial, and it does not somehow become an ongoing violation of federal law merely because Plaintiff continues to not receive the requested accommodation." *Macinski v. New York State Office for People with Developmental Disabilities*, No. 3:25-CV-1390 (GTS/ML), 2026 WL 2099021, *6 (N.D.N.Y. July 21, 2026). To the extent the Court might strain to interpret the Complaint as alleging that Plaintiff continues to be denied advancement to the Associate Economist position, such harm is properly construed as the effect of the alleged violation, not a continuation of the violation itself. *See id.* at *7 (reasoning that plaintiff's continuing inability to work was an effect of plaintiff's termination, distinct from the termination itself which constituted the alleged violation). The Complaint thus fails to allege an ongoing violation of federal law.[7]

---

[7] Because Plaintiff fails to plead an ongoing violation of federal law, the Court need not reach the second prong of the *Ex parte Young* exception. The Court nevertheless notes that, contrary to Plaintiff's assertion in his Opposition that he seeks "injunctions against discriminatory exam policies," the Court discerns no request for prospective relief in the Complaint. Dkt. No. 21 at 6; *but see generally* Dkt. No. 1 (no request for injunction). Moreover, the Court has serious doubts

Plaintiff's Section 1983 claims against the Individual Defendants in their official capacities therefore do not satisfy the *Ex parte Young* exception to state sovereign immunity.[8] The Court accordingly grants this portion of the Motion and dismisses Plaintiff's Section 1983 claims against the Individual Defendants in their official capacities with prejudice.

**2. Freestanding Section 1983 Claim**

Plaintiff's Third Cause of Action asserts that Defendants have violated Section 1983. Dkt. No. 1 at ¶¶ 93-101. Defendants argue that Section 1983 does not provide a freestanding claim for relief. Dkt. No. 17-2 at 6 (citing *LaFever v. Clarke*, 525 F. Supp. 3d 305, 315 n.1 (N.D.N.Y. 2021); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). The Court agrees and accordingly dismisses Plaintiff's Third Cause of Action against all Defendants with prejudice. Dkt. No. 21 at 8.

**3. *Monell* liability**

Plaintiff's Fourth Cause of Action invokes the theory of liability recognized in *Monell v. New York City Dep't of Social Services*. 436 U.S. 658 (1978). Defendants argue that *Monell* applies only to municipalities and therefore does not apply to any Defendant here. Dkt. No. 17-2

---

that Plaintiff has standing to seek prospective relief given the absence of any "impending future injury" to his rights. *H.B. v. Byram Hills Cent. Sch. Dist.*, 648 F. App'x 122, 125 (2d Cir. 2016) (finding that plaintiff lacked standing for prospective relief where circumstances giving rise to past injury were "unlikely to recur").

[8] Plaintiff's Opposition additionally asks the Court "to examine the balance the [*sic*] Plaintiff's right to exercise his religion against the [S]tate's interest in administering the Civil Service exam system," in arguing that the Individual Defendants in their official capacities should be treated as "persons" for purposes of Section 1983 liability. Dkt. No. 21 at 6-7 (citing *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003)). To the extent that Plaintiff asks the Court to engage in a balancing exercise to determine whether the Individual Defendants are amenable to suit, that is not the law. The *Ford* court engaged in balancing to assess the merits of the First Amendment claim before it, not to overcome a sovereign immunity defense. 352 F.3d at 588.

at 14. Plaintiff responds that the prerequisites to *Monell* liability are met where the relevant entity functionally acts as a local government. Dkt. No. 21 at 8.

Plaintiff is correct that in general, an entity's amenability to suit under *Monell* turns on whether it functionally is "more like 'an arm of the State,' such as a state agency, than like 'a municipal corporation or other political subdivision.'" *Mancuso v. New York State Thruway Auth.*, 86 F.3d 289, 292 (2d Cir. 1996) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)). Courts, however, have repeatedly found NYSDCS to be a state agency for purposes of *Monell* liability. *See, e.g.*, *Sulehria v. New York*, No. 1:12-CV-21 LEK/ATB, 2012 WL 1288760 (N.D.N.Y. Feb. 8, 2012), *report and recommendation adopted*, No. 1:12-CV-0021 LEK/ATB, 2012 WL 1284380, at *7 (N.D.N.Y. Apr. 16, 2012) ("*Monell* is not a proper basis for relief against [NYSDCS]"); *Askew v. New York*, No. 109-CV-553 GLS/RFT, 2010 WL 276194, at *7 (N.D.N.Y. Jan. 15, 2010) ("liability under *Monell* pursuant to § 1983 attaches solely to municipalities, and not to the State or its individual officers. Therefore, to the extent that [plaintiff] asserts claims under . . . § 1983 against [NYSDCS] and the individual defendants in their official capacities, those claims are dismissed.") (internal citations omitted); *Ibrahim v. New York State Dep't of Health*, 581 F. Supp. 228, 232 (E.D.N.Y. 1984) (NYSDCS, along with other "named New York State agencies . . . are clearly 'part of the State'" for purposes of *Monell* liability.).

Accordingly, the Court grants this portion of the Motion and dismisses Plaintiff's Fourth Cause of Action against all Defendants with prejudice.

**4. Personal Involvement**

Defendants argue that Plaintiff's remaining claims under Section 1983 against the Individual Defendants should be dismissed because the Complaint fails to plead their personal involvement in any alleged constitutional violation. Dkt. No. 17-2 at 12-13.

Under Section 1983, "'[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' is 'liable to the party injured.'" *Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023) (alterations in original) (quoting 42 U.S.C. § 1983).

"[I]t is well settled that, in order to establish a defendant's individual liability in a suit brought under [Section] 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Morabito v. New York,* 803 F. App'x 463, 466 (2d Cir. 2020) (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013)). A plaintiff must plead "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). "Pursuant to this requirement, a [Section] 1983 plaintiff must allege a tangible connection between the acts of the defendant and the injuries suffered." *Keyes v. Venettozzi*, No. 18-cv-0372, 2022 WL 991402, at *6 (N.D.N.Y. Mar. 31, 2022) (citation and quotation marks omitted). In other words, "the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained." *Durr v. Slator*, 558 F.Supp.3d 1, 20 (N.D.N.Y. 2021) (citation omitted).

"'[P]ersonal involvement of a supervisor may be established by direct participation in a constitutional violation or by showing that he created a policy or custom under which the violation occurred.'" *Saratoga Black Lives Matter, Inc. v. City of Saratoga Springs*, No. 24-cv-00865, 2026 WL 710089, at *6 (N.D.N.Y. Mar. 13, 2026) (quoting *Rindgen v. Cnty. of Broome*, No. 24-cv-1325, 2025 WL 2772080, at *17 (N.D.N.Y. Sept. 29, 2025)); *see also Sanchez v. Nassau Cnty.*, 662 F. Supp. 3d 369, 416 (E.D.N.Y. 2023) ("Post-*Tangreti*, district courts in the Circuit have

determined that personal involvement still may be established for a supervisory defendant if he or she 'created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom.'") (collecting cases); *Dixon v. Farina*, No. 25-cv-00068, 2026 WL 482664, at *14 (N.D.N.Y. Feb. 20, 2026) (similar) (collecting cases). However, "conclusory allegations that a defendant was involved in the creation and enforcement of unconstitutional policies cannot sustain a claim of personal involvement." *Rindgen*, 2025 WL 2772080, at *17 (citation omitted).

Plaintiff argues that the Complaint "details Defendant Sullo's direct denial of Plaintiff's Ramadan request, Defendant Hogues' policy enforcement, and Defendant Hochul's oversight enabling discrimination." Dkt. No. 21 at 7 (citing Dkt. No. 1 at ¶¶ 42-50).

The Complaint indicates that Plaintiff and Defendant Sullo communicated for the first time on January 12, 2023, more than seven months after the date of the Examination. Dkt. No. 1 at ¶¶ 70-72. Plaintiff's email to NYSDCS requested clarification as to why he "*was* denied the religious accommodation," and indicated he was "asking for *future* reference." *Id.* at ¶ 70 (emphasis added). Plaintiff offers no allegation that Defendant Sullo was aware of Plaintiff's request prior to their January 12, 2023 exchange. Nor does anything in Defendant Sullo's alleged response suggest he had any involvement in formulating NYSDCS's policy or applying it to Plaintiff's request. *Id.* at ¶ 72. The Complaint indicates only that NYSDCS "summarily denied [Plaintiff's] request," without indicating who at NYSDCS rendered that decision. *Id.* at ¶ 46. Indeed, the Complaint identifies a different NYSDCS employee, non-party Erika Morrisette, as the person who informed Plaintiff that his religious accommodation request had been denied. *Id.* at ¶ 42. The Complaint alleges no other actions by Defendant Sullo. *See generally id.* Allegations that Defendant Sullo provided Plaintiff with an explanation of NYSDCS's decision, months after

the fact and without any hint that he was involved in the initial denial, are insufficient to state a claim.

The Complaint is similarly lacking in allegations as to the direct involvement of Commissioner Hogues and Governor Hochul. The Complaint identifies Commissioner Hogues as the "Commissioner of the New York State Department of Civil Service," *id.* at ¶ 14; and identifies Governor Hochul as the "Governor of the New York [S]tate and head of the State's Executive Branch including the Department of Civil Service," *id.* at ¶ 15. Neither party appears again in the Complaint until the allegation, in Plaintiff's Third Cause of Action, that "all acts complained of were carried out by [the Individual Defendants] . . . under the supervision [of] the Executive of the State of New York Defendant Hochul [and] Commissioner of the New York Department of Civil Service Defendant Hogues."[9] *Id.* at ¶ 97. Nothing in the Complaint indicates with specificity that either Commissioner Hogues or Governor Hochul were ever aware of Plaintiff's request, had any role in developing the governing policy, or participated in the denial. *See generally id.* These conclusory allegations of supervision alone are insufficient to state a claim.

Because Plaintiff has failed to plead with specificity the Individual Defendants' personal involvement in actionable conduct, the Court dismisses Plaintiff's First, Second, and Fifth Causes of Action against the Individual Defendants in their individual capacities without prejudice.

### B. Title VII Claims

Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with

[9] The same paragraph includes "Defendant Morrisette and all lower ranking subordinates in [NYS]DCS" in the list of individuals alleged to have supervised "[a]ll acts complained of." *Id.* at ¶ 97. As discussed above, Ms. Morrisette is not listed as a defendant in this action, nor does the docket indicate that she was served. *See* Section I, n.1, *supra*.

respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Title VII also prohibits an "employer" from "discriminat[ing] against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). "The plausible existence of a requisite employer-employee relationship is thus a cornerstone of an adequately pled Title VII complaint." *Felder v. United States Tennis Ass'n*, 27 F.4th 834, 838 (2d Cir. 2022). Courts in this Circuit apply a set of "non-exhaustive factors set forth by the Supreme Court that, when present, may indicate the existence of an employer-employee relationship." *Id.* at 843. These factors include:

> [T]he hiring party's right to control the manner and means by which the product is accomplished . . . [;] the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in the business; the provision of employee benefits; and the tax treatment of the hired party.

*United States v. City of New York*, 359 F.3d 83, 92 (2d Cir. 2004) (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751-752 (1989)).

Defendants argue that "NYSDCS is not Plaintiff's employer under any definition" because "[t]he administration of an examination used by an employer is insufficient to create an employer-employee relationship between the entity administering the exam and the test taker under Title VII." Dkt. 17-2 at 15-16 (citing *Alameda v. Assoc. of Social Work Boards*, No. 23-CV-6156 (KMK), 2024 WL 4302389, at *4 (S.D.N.Y. Sep. 25, 2024)).

On its face, the Complaint does not suggest that Plaintiff is employed by NYSDCS. Plaintiff describes himself as "employed as a New York State Department of Labor [] senior economist." Dkt. No. 1 at ¶ 11; *see also id.* at ¶ 17 (describing Plaintiff's "employment with the [NYS]DOL"); ¶ 20 ("Plaintiff sought to advance his career at the NYSDOL"); *cf. id.* at ¶ 16 (describing Defendant Sullo as "employed by the New York State Department of Civil Service"); ¶ 41 (describing non-party Erika Morrisette as a "[NYS]DCS Testing Services Division, Accommodations Unit employee"). The description of NYSDCS on its website, which he adopts, asserts that it "serv[es] approximately 150,000 state employees." *Id.* at ¶ 12.

Indeed, to the extent that Plaintiff has had any relationship with NYSDCS, the Complaint indicates that it has been limited only to the scheduling and administration of his initial examination and the Examination at issue in this case. *See id.* at ¶¶ 18-19; 35; 55-57. While Plaintiff alleges that the Examination was a prerequisite for the Associate Economist position, he does not allege that NYSDCS was the entity responsible for actually granting Plaintiff his promotion or providing his salary and benefits. *See id.* at ¶ 21. And while Plaintiff indicates that administering examinations is part of NYSDCS's regular business, Plaintiff was the *recipient* of the Examination, suggesting he was one of the thousands of state employees that NYSDCS serves, rather than an employee of NYSDCS. *See id.* at ¶ 12.

Plaintiff asks the Court to construe NYSDCS as his employer for purposes of Title VII, however, arguing that its control over the Examination "directly affect[ed] Plaintiff's career" because the results determined his eligibility for promotion. Dkt. No. 21 at 9. He cites *Gulino v. N.Y. State Educ. Dep't* for the proposition that a state agency utilizing discriminatory tests may be construed as an "employer" for purposes of Title VII. *Id.* (citing 460 F.3d 361 (2d Cir. 2006)). The holding in *Gulino* is distinguishable because the *Gulino* plaintiffs were teachers, employed by

the defendant board of education in its ordinary business of educating students in New York City public schools, when they took the examination. 460 F.3d at 380. In reaching its conclusion that the defendant board of education was the plaintiffs' employer, the *Gulino* court distinguished two cases involving defendants who were "merely licensing entities." *Id.* at 381 (citing *Nat'l Org. of Women, New York Chapter v. Waterfront Comm'n of New York Harbor*, 468 F. Supp. 317 (S.D.N.Y. 1979); *Lavender–Cabellero v. Dep't of Consumer Affairs of City of New York*, 458 F. Supp. 213 (S.D.N.Y. 1978)). Plaintiff is not employed by NYSDCS in its ordinary business of administering examinations, *see* Dkt. No. 1 at ¶ 12; he instead took the Examination merely as a means of advancing his career with NYSDOL, *id.* at ¶ 20.

Plaintiff also cites *Ricci v. DeStefano* in support of his argument that administering an examination is sufficient to render an entity an "employer." Dkt. No. 21 at 9 (citing 557 U.S. 557 (2009)). *Ricci* is also readily distinguishable. That case involved a suit by certain white and Hispanic firefighters in New Haven, Connecticut who likely would have been promoted based on their above-average performance on an examination but who were denied promotions by the city of New Haven out of concern that racial disparities in examination performance created a risk of disparate-impact liability. *Ricci*, 557 U.S. 562-563. The parties in *Ricci* did not dispute, and the Supreme Court therefore did not resolve, the defendants' status as the plaintiffs' employer. *See generally id.* Moreover, the examination at issue was "develop[ed] and administered" by an outside company, which was not a party to the litigation. *Id.* at 564. *Ricci* accordingly offers no insight as to whether administering an examination is sufficient to render an entity an "employer" under Title VII.

Plaintiff further directs the Court to *Cook v. Arrowsmith Shelburne Inc.*, and offers the parenthetical "(control test)." Dkt. No. 21 at 9 (citing 69 F.3d 1235, 1240 (2d Cir. 1995)). Plaintiff

is correct insofar as *Cook* discusses a four-part test used to assess the existence of a constructive employment relationship for purposes of Title VII where a plaintiff is not employed by a defendant in the conventional sense. *Cook*, 69 F.3d at 1240. However, the test described in *Cook* is used to "address[] the question of parent-subsidiary liability." *Id.* Plaintiff offers no explanation as to whether or how the Court should apply that test to the instant case, nor does he offer any indication that NYSDOL and NYSDCS have a parent-subsidiary relationship. *See* Dkt. No. 21 at 9; *cf.* N.Y. Civ. Serv. L. § 5 (establishing the Department of Civil Service); N.Y. Lab. L. § 10 (establishing the Department of Labor).

In sum, Plaintiff does not allege facts sufficient to establish that NYSDCS should be construed as his "employer" within the meaning of Title VII and accordingly fails to state a claim upon which relief can be granted. The Court therefore dismisses Plaintiff's causes of action under Title VII without prejudice.

### C. State Law Claims

In addition to his Section 1983 and Title VII claims, Plaintiff asserts state law claims for violations of the New York State Constitution and NYSHRL. Defendants request that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3). Dkt. No. 17-2 at 18. Even where state law claims form part of the "same case or controversy," courts can decline to exercise supplemental jurisdiction over the claims pursuant to Section 1367(c), if, among other reasons, the state law claims "substantially predominat[e] over the claim . . . over which the district court has original jurisdiction [or] the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c); *see also Shahriar v. Smith & Wollensky Rest. Grp. Inc.*, 659 F.3d 234, 245 (2d Cir. 2011). The Second Circuit has also indicated that, as a general rule, district courts "should decline the exercise of

supplemental jurisdiction when all federal claims have been dismissed at the pleading stage." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) (citation omitted). Here, Plaintiff's federal and state claims form part of the same case or controversy because they all stem from Defendants' alleged denial of Plaintiff's request for accommodation, and the Court has already dismissed Plaintiff's federal claims. *See* Sections VI.A-B, *supra*.

However, before declining to exercise supplemental jurisdiction, "the Court must also consider whether values of judicial economy, convenience, fairness, and comity would be disserved by such a decision." *Principia Partners LLC v. Swap Fin. Grp., LLC*, No. 18-cv-7998, 2019 WL 4688711, at *5 (S.D.N.Y. Sept. 26, 2019); *see also Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004). Plaintiff offers no argument as to why the Court should exercise supplemental jurisdiction in this posture. *See* Dkt. No. 21 at 11 ("Courts regularly exercise jurisdiction over related state claims *unless the federal claims . . . are dismissed*") (emphasis added). This case is in its early stages, and any discovery has not yet begun, *see* Dkt. No. 19, so any concerns about judicial economy, convenience, and fairness are limited, *see 24 Seven, LLC v. Martinez*, No. 19-cv-7320, 2021 WL 276654, at *10 (S.D.N.Y. Jan. 26, 2021). Moreover, "[a]llowing Plaintiff to pursue its state law claims in state court would 'avoid needless decisions of state law by this Court, which also promotes the interests of comity and justice.'" *Principia Partners*, 2019 WL 4688711, at *6 (quoting *Moran v. Tryax Realty Mgmt, Inc.*, No. 15-cv-8570, 2016 WL 3023326, at *4 (S.D.N.Y. May 23, 2016)). Accordingly, the balance of factors counsels in favor of declining to exercise supplemental jurisdiction. *See, e.g.*, *Ivey v. Sodexo S.A.*, No. 1:25-CV-1025 (GTS/ML), 2026 WL 2185270, at *15 (N.D.N.Y. July 29, 2026) (declining to exercise jurisdiction over state law claims where plaintiff failed to plead violations of Title VII or

Section 1983); *Lomtevas v. City of Schenectady*, No. 1:25-CV-1067 (MAD/PJE), 2026 WL 1601451, at *7 (N.D.N.Y. June 4, 2026) (same).

The Court accordingly declines to exercise supplemental jurisdiction over Plaintiff's State law claims and dismisses them without prejudice.

## V. CONCLUSION

Accordingly, the Cout hereby

**ORDERS** that Defendants' motion to dismiss, Dkt. No. 17, is **GRANTED**, as set forth in Section IV of this Memorandum-Decision and Order; and the Court further

**ORDERS** that Plaintiff's claims pursuant to Section 1983 against NYSDCS and the Individual Defendants in their official capacities be **DISMISSED with prejudice**; and the Court further

**ORDERS** that Plaintiff's Third and Fourth Causes of Action be **DISMISSED with prejudice**; and the Court further

**ORDERS** that Plaintiff's First, Second, and Fifth Causes of Action against the Individual Defendants in their individual capacities be **DISMISSED without prejudice**; and the Court further

**ORDERS** that Plaintiff's claims pursuant to Title VII against NYSDCS be **DISMISSED without prejudice**; and the Court further

**ORDERS** that Plaintiff's claims pursuant to Title VII against the Individual Defendants be **DISMISSED with prejudice**; and the Court further

**ORDERS** that Plaintiff's claims pursuant to the New York State Constitution and NYSHRL be **DISMISSED without prejudice**; and the Court further

**ORDERS** that any amended complaint must be filed within **thirty (30) days** of the filing date of this Memorandum-Decision and Order; and the Court further

**ORDERS** that, if Plaintiff fails to file a timely amended complaint, the Clerk is directed to close this case without further order of this Court; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 27, 2026
Albany, New York

Anne M. Nardacci
Anne M. Nardacci
U.S. District Judge